You may call the next case. Case number 23-3050 from the District of Minnesota, Pamela Cole v. Group Health Plan. Now, this is the day in court when, like, every case has somebody named Erickson in it. That's pretty much a shocking deal. So, you know, I just want to note that for the record, and Mr. Erickson, you may proceed. Thank you.  You may. Good morning, everyone. Greg Erickson and Benjamin Lonari on behalf of Petitioner Pamela Cole.  The relevant facts to this case is that Ms. Cole was a physical therapist at the Respondent Health Partners facility for a number of years. She worked during the entire pandemic and served patients, and then at some point in Ms. Cole informed health partners of her sincere religious beliefs that conflicted with the COVID-19 vaccine mandate and obtained a religious exemption. One of the parameters that health partners established for its employees that received both religious and medical exemptions required that they not be given what's been known throughout this case as the orange badge lock, okay? Counsel, maybe it's because this was on a motion to dismiss, but I'm confused. What was the nature of the claim pled here or claims? Is the heart of your case a religious discrimination case, or is it a failure to provide reasonable accommodation, or is it both? Or are those not separate claims under our case law? Okay, what we are claiming is a religious discrimination, disparate treatment claim, and failure to accommodate. So we are claiming both. But clearly there was an accommodation here, correct? No, but your honor, the EEOC requires that when an employee notes to the organization a concern associated with a religious exemption, which she did hear in her EEOC filing, your honor, okay? She filed with the EEOC. Go ahead. And you indicated- No, I'm just puzzled, and don't worry, I'll work up to a speech later. She filed with the EEOC and notified the corporation of what she called a scarlet letter in reverse. And what she is complaining about, your honor, is the fact that her protected medical information was made public to the entire staff and patients. And she was treated differently. So is your argument that the only reasonable accommodation could be no mask, no vaccine? In other words, you don't need the vaccine, period. And no other elements to the accommodation whatsoever. In other words, is that the only reasonable accommodation in your mind? No, no, your honor. I believe that the accommodation that she was asking for is basically the elimination of the badge lock policy, your honor. Can we step back for a moment, because I, did he answer your question sufficiently? All right, I'm still stuck in the land of what are we doing here, all right? And that's because we're here on a motion to dismiss, right? And at this stage, the only question is, have you plausibly pled a claim for religious discrimination, right? And you look at the elements, and you look at what you said has happened. The issue for us would be plausibility on that. But if you look under Iqbal and Tuomly, it's like, that's a pretty easy deal with reading your complaint. Now, in order for us to really get to any point where we actually start to look at what is the reasonableness of the accommodation. Well, okay, that's a summary judgment thing at the earliest after the record's fully developed. Unless they have adequately demonstrated that you have pled accommodation in your complaint. And of course, what they're saying, you've got the orange badge lock, and so you have pled the existence of some accommodation. And then the issue for us becomes, as a matter of law, is it impossible for a finder of fact, once the record's developed, to conclude that that is not a reasonable accommodation? Okay, major- Isn't that where we're at? 100%, Your Honor. And what I would like to do is I would like to crystallize their argument, okay? What the district court and what respondent would have this court do is require a religious objection to the discrimination about which they are complaining. And I'm going to make this a much more extreme example to kind of tease this out for you all. Okay, imagine if they eschewed the badge lock system that notified everybody of her protected health information. And instead, had the unvaccinated wear t-shirts that said, beware, unvaccinated, okay? And they had to wear those around at their job and be subject to ridicule, which we pled here, okay? Imagine the standard that they're arguing for and that the district court enforced is if she didn't have a religious objection and we didn't plead it, to being labeled, beware, unvaccinated, we have no claim under Title VII and the MHRA. That can't be the law. It just simply cannot, okay? Because what that would do is it would give license to employers to discriminate freely against their employees who use the religious exemption process. Just as long as the discrimination used didn't conflict with their religious beliefs. That's not, understood that's hypothetical, but that's not the sort of thing you pled here, is it? You pled, and I don't have every paragraph of your complaint. But there is an, I mean there's no obvious attempt to humiliate by assigning badges on the face of the pleading. Your argument basically goes that employees responded to, and you're a hypothetical. The accommodation itself is designed to humiliate, perhaps, you might argue. In this case, it was co-workers who responded to an accommodation, which could be argued is neutral on its face, in a negative way. And in fact, responded negatively to those who claimed a religious and a medical exemption. Isn't that, does that difference make a difference? Here's my point. You know why we're completely unable to determine whether or not there was a material adverse employment action? Because we weren't able to do discovery. And it's instructive- And I assume you would be arguing that that would be condition of employment that was an issue in this case. That there was a material change in the conditions of employment. 100%. Imagine this, your honor, I'm doing all sorts of these cases right now. And some of them have proceeded to discovery, okay? Since they've proceeded to discovery, guess what we found out? A lot of the things that the defendants pled are false. And we were able to figure that out. And I'll give you a concrete- Counselor, we're here talking about the pleadings. No, no, I understand that. I'd like to go back to the pleadings. Can I please finish my point? Because it's an important point. What we continually harped on in both our primary brief and our response is there isn't a single circuit court case that either the court or the respondent cited that relates to a 12B6 motion on an adverse employment action. And the reason for that is because the circuits are aware that those, that analysis is fact intensive. And you can't do it at the 12B6 stage. You just can't do it and no one's done it. Let's, and I understand that, and I think you've made your point. Now let's go back to the complaint itself, right? Because that's the land in which we live. And I think that really if you look at your paragraph 19, and you look at what it conveys about the orange badge lock, and I'll read it to you. It says the badge lock was intended to be used as an indication of up to date vaccination status. It goes on to say that starting on November 28th, and this is a quote of their policy. The new red badge locks must be worn for colleagues to remove their masks in administrative facilities and non-patient areas of our hospitals and clinics. Now, that clearly is a policy that says we have the badges so that other employees are aware of who's vaccinated and who's not. And it modifies the behavior that's tolerable or allowable inside the facility based on the badge itself, right? Now, is that sufficient on its face to give rise to a question as to whether or not the accommodation unreasonably exposed people who are unvaccinated to ridicule, Such that discovery needs to go forward. Or are you just arguing that, hey, it doesn't matter, whenever we get in the land of accommodation 12B6 does not allow us under any circumstances to dismiss because it's all plausibly pled at that point because you can't weigh the accommodations reasonableness on the pleading. And this is not a case where we've got an answer in, because they could have answered, and they could have put in all the things in their answer that they subsequently argued. And they could have said, now we're in 12B6 land, you can consider the pleadings. They didn't answer. So all we have is your complaint. Your Honor, I'd like to make two responses to that. I'm flat out, I don't think that this analysis, these factual findings about material, about adverse employment action, are appropriate at the Rule 12B6 stage. And the absence of authority in the circuit level would indicate that my argument is correct, okay? The other thing that I want to point out is an accommodation argument that we obviously pled, their failure to accommodate. The rule that I think that should be applied, okay, in situations where an employee makes a complaint about a procedure associated with a religious basis, okay, which is what happened here. Their EEOC filing was associated with a religious basis. If the employer does not engage in a reasonable accommodation dialogue with the complaining employee, Rule 12 dismissal is out, and that can serve a number of purposes, Your Honor. And- What case do you have for that? No, no, I'm saying, because basically we're making law here. Because they don't have circuit law that they're citing on this issue. And a rule that I'm proposing, and the reason why I'm proposing this rule is to encourage employers to engage in this process to keep these issues out of the courtrooms. The reason why the federal courts are basically awash in these cases right now is because the HR departments at these various corporations did not follow what the EEOC told them to do. Had they done it, we don't know if any of these cases would even be here, Your Honors. So, I'm going to reserve the rest of my time. Just didn't tell you you're well into your rebuttals, so you may reserve. And Ms. Ward, is it Rana or? Yes, it's Rana. Thank you. May it please the court, counsel. Your Honor, you asked a question a couple of minutes ago that I want to address. And that question was, aren't we here asking, is it impossible for a finder of fact to conclude that it is not a reasonable accommodation, right? The answer is, that is exactly the situation that we're having. We have a US Supreme Court case that says, it's the Trans World Airlines case. That says, if the accommodation given resolves the religious conflict, that's the end of the question. Why is she begging the question though, resolving the conflict? I mean, plaintiff here would suggest this did not resolve the conflict. As a matter of fact, it made her working conditions worse. Now that's a slightly different way of approaching the question than you are. But she's saying, yeah, on paper, we got an accommodation, right? But in practice, anyone who took advantage of this accommodation, whether for religious or in harassment, which was at the very least condoned by the employer. Now, is that actionable if that's pled? Your Honor, I would argue that that is getting to the discrimination issue, whereas when we're talking about the accommodation issue. But I can't keep the two straight. So, I mean, they seem to, at the pleading stage, they seem to sometimes bleed over into each other. They do, Your Honor. So, when we're talking about the accommodation issue, US Supreme Court is clear. If the religious objection is gone, there is no further discussion that's needed. We don't need to get to discovery because there is no current religious accommodation needed. Counsel, I'm not sure. It seems that that's an awfully broad reading of the law. The concern that I have with the district court's opinion is that they seem to conclude that if the proposed accommodation creates a material employment disadvantage. So, then they're faced with this Hobson's choice. You can either comply with your religious beliefs, or you can accept an accommodation that gives you a material employment disadvantage. Is that the law? I would say in that situation, which I would disagree is not a situation that we have here, that the proposed accommodation creates a material employment disadvantage. They wouldn't have a failure to accommodate claim, because there's an accommodation that resolves a religious issue. Now, they're just saying, I don't like- But does it resolve the issue if their only choice is to either violate their religious beliefs or accept a employment disadvantage? I would argue that under the accommodation portion of the claim, it would resolve that claim. But under the- But wouldn't there still be a question of reasonableness of that accommodation? Because it's not just accommodation, it's got to be a reasonable accommodation. And doesn't that issue just kind of keep floating around in the ether until someone's developed a record enough that, I mean, that's the real problem here. We don't have your position laid out because you didn't bother to answer. And we don't have the record developed at all, so we don't know what happened. And all we have, and all that we can actually analyze, is their complaint. And the argument has to be that their complaint raises an accommodation which is on its face reasonable, such that no reasonable fact finder could find any other way. Isn't that, as of necessity, the only legal argument that you've given to us because of the way that you advanced on the pleadings? No, Your Honor, I disagree with that. Why? Because what the pleadings actually say, from our point of view, when you look through everything that's in there, she admits she doesn't have any religious issue with continuing working. In fact, she continues to work at Health Partners. She has an issue with continuing working under an accommodation that puts her at a material disadvantage. She does not allege a material disadvantage. I think she alleges it, whether she could prove it. I mean, she alleges she's harassed. She alleges some uncomfortable situations. Well, uncomfortable, subject to shame and judgment, the existence of a reverse scarlet letter. And it's still notice pleading, even after Iqbal. And the question is, is it plausibly pled? Plausibly pled is a really low standard. I mean, we forget that sometimes because in the federal courts we're always getting rid of things under 12B in ways that personally I think we shouldn't be doing. But I mean, but plausibly pled, that's the question here. And we haven't got the benefit of your answer. We don't have the benefit of anything, an affidavit or a statement that was attached to the answer. We've just got what they pled. And you tell me why it's not plausibly pled. Where are the deficiencies? Because under the Trans World Airlines case, if the religious accommodation is resolved, regardless of whether the plaintiff doesn't like the accommodation, has personal reasons why. At the lower court, your honor, the argument was about mass. So any nonsensical accommodation may be advanced? And under trans world, we end the argument? Under trans world, that is what the case law says. If it is, if it resolves a religious conflict, there may be other claims. But it's not a religious. Why isn't there an ongoing religious conflict in the sense that she's exercising first amendment rights and she's suffering, allegedly suffering employment results? She, on the face of the complaint, and in every single pleading that appellant has made in this case, she does not allege religious discrimination, this is key. She alleges that people who are unvaccinated- It's woven through her, I mean, she wouldn't be here if it wasn't for her religion. She wouldn't be in the cohort of people who don't get an orange badge if it wasn't for her religion, right? Yeah, that is correct. So why am I looking at that wrong? Because she argues that vaccinated people are treated differently than unvaccinated people. And there are more than just religious objections that are unvaccinated. You can imagine someone who wants to wear a head covering, for example, for religious reasons, and then is subjected to a head covering rule. Say, well, look, you're being discriminated against because you're wearing a religious head covering. They're saying, no, I'm wearing a head covering because I'm religious, therefore you're discriminating against my faith. I have a hard time reaching where you're at to say, no, it's not religious discrimination, it's vaccine status. Because in that situation, your honor, the people who would be wearing the head covering would be wearing it for religious reasons. In this situation, there are a number of plausible reasons why somebody would be unvaccinated. In fact, in his argument, the first sentence that Mr. Erickson stated was, people who got medical exemptions or religious exemptions were unvaccinated and were treated exactly the same. Similarly situated people who did not have her religious beliefs were treated exactly the same. Arguably, the company's off the hook because it was allowing a hostile work environment for people with religious convictions and without. At least in this, and I know that's not the way you would phrase it. But the way, from your opponent's perspective, as long as you discriminate against some folks without religious beliefs, you're good. That's not a fair question. Well, I think another way of phrasing it is, does the complaint allege facts showing discrimination based on religion or vaccination status? That is exactly the point that I'm articulating right now. If you look every single circle, every time you see in all the briefing, every time I just looked through the complaint while I was sitting back there, circle it. Vaccinated people are treated differently than unvaccinated people. And under the law, that is a different argument than I was treated differently because of my religion. No one has to know why she doesn't have a badge lock or why she's wearing a mask. It could be for medical reasons. No one has to know that. So it's not discrimination on the basis of her religion, if that's what she's claiming. But in addition, Your Honor, she has not pled a hostile work environment claim. Counsel told you it was a disparate treatment claim. So the discussion of the hostile work environment, that's not the claim we have before us. And she hasn't pled disparate treatment as well. She says co-workers may have been uncomfortable and didn't like that she would keep her mask on so she would go and have Zoom meetings. She does not allege that health partners ridiculed her, that health partners, her leaders, treated her differently. Did she allege that they allowed this to continue, was that pled? I don't see where it was pled in the complaint, that they allowed it to continue. So she simply pled that it occurred. It occurred, and she felt to avoid uncomfortable situations, she would go to Zoom meetings instead, so she wouldn't have to leave her mask on. We would argue under a circuit law that is not materially changing the terms and conditions of her employment to allow her to plausibly plead an adverse employment action. But even if we don't want to talk about the adverse employment action, we have the US Supreme Court case law that says when your religious conflict is gone, when the only way that you can continue working is to violate a religious tenet, that's what the law says, when that is resolved, there is no religious accommodation claim that's left. You may have a disagreement with, or another claim with why that accommodation is not valid, but it's not a religious accommodation claim, and it's not under Title VII or the- So if the accommodation that's offered, similar to a hypothetical that was given earlier, is to wear a badge that says science denier. That would eliminate the religious discrimination claim? Well, I would argue that it would remove the religious discrimination claim, assuming that people had medical exemptions. If they had no objection to wearing a badge saying, no religious objection to wearing a badge saying science denier, but that resolves the issue. Under US Supreme Court case law, I would say that it does. Now, there may be other issues with that. Other claims that someone could bring, it's not the situation that we have here, but under the case law, there is no religious dispute. Otherwise, this would open the court up to claims that people could bring where they don't have a religious dispute with something that an employer does, but they disagree with it. They don't like. Well, why doesn't that allow employers to completely circumvent the statute? If they could propose an accommodation which creates a material employment disadvantage to resolve a religious objection. What we usually see in these cases, in fact, in the cases that are cited here, is when we're looking at whether an accommodation is reasonable, it's because the accommodation doesn't go far enough to completely resolve the religious conflict. But the tough thing for me is the trigger for the whole accommodation here, at least as pledged here, is a religious belief. And then to get to the accommodation and completely say, look, it's resolved your religious concern. Now you just gotta boatload of other problems, and it's not actionable. Well, she wouldn't have been there without her religious beliefs from her pleadings. Correct, but for a discrimination claim, you still need to have been treated differently than similarly situated individuals in this case. Counsel says, begin the argument. Her loss here is that people don't want vaccines for a variety of reasons, essentially. Yes. And this is not a religious, this is not a First Amendment case. This is something else. I won't ask you to tell me what you think it should be, but it's not a well pled. Correct. It is not a claim, she is not stating a claim in her pleadings as a matter of law for religious discrimination. Now I do think it's also important to point out, because we're talking about the different types of accommodations and whether this is reasonable. The accommodation provided was required by the center's CMS. Which is not in the record because it was on a motion to dismiss, right? It's in the record in that the CMS mandate is a legal rule, and the court can review the agency rules. Did the district court have that? Yes, the district court had that. It was in our initial briefing, it's in our briefing here. It is a rule, it's a law, the rule was upheld by the US Supreme Court. Would that convert this to a summary judgment motion? No, it does not, your honor, because that is a legal rule. Yeah, you could still take judicial notice of the law, of any law that might be applicable, right? That's the legal standard, doesn't change the pleading, because we're just taking judicial notice of the law. Now that goes to the undue burden prong, though, doesn't it? It goes to the reasonableness as well, your honor. We have cited a case, specifically in the COVID context, the Bay case out of the Second Circuit, where they looked at, under the ADA, heightened undue burden analysis, but also whether it's reasonable. I have case law that talks about, from the Eighth Circuit, whether an accommodation is reasonable. So if, I believe your honor had asked, what's the accommodation you're looking for? Essentially, you can't have her wear a mask when other people don't, because then she's identified. And the purpose of the badge lock, as mentioned in paragraph 19, was to know whether people had to keep their masks on. Actually, it was a different kind of mask, not that she's just wearing a mask. Everyone's wearing a mask at this point, right? And she had to wear a different kind of mask is what she pleaded, right? That she has to wear a medical grade mask, and everybody else can wear their kind of regular blue surgical masks. So you got that as a difference, then we have the badge that looks different. And in the end, what you're saying, essentially, is that everybody who's not vaccinated gets to follow the same rules. And she says she has no problem with wearing a mask, and that therefore, as a result of having pled that, this case is overdone. Because under trans world, what you now have got is not an issue of whether there's religious discrimination. But somehow, whether the accommodation is otherwise going to fit into some other category under the employment law that you can make it fit, and if there is such a thing, they haven't pled it. Correct, and the badge lock is a red herring, because she would have had to wear a mask at all times, regardless of whether she had a badge lock or not, which would identify her as unvaccinated. And the CMS required either lose your Medicare and Medicaid participation, potentially, or have heightened standards for infection prevention for people who are unvaccinated. That is exactly what wearing a mask is. Okay, thank you. Thank you, your honors. What I'm going to do is, I'll give you two minutes, given that we've only got 56 seconds. And I would really like you to focus in on this argument. That essentially, once we've got everybody in the same box, and there's not a religious objection to wearing a mask or wearing a badge, generally, that once we get to that point, whatever it is, it's no longer a religious-based claim, and you've got to move to something else. Okay, I will respond to that, but I do need to respond to counsel's assertion that the CMS mandate required the way that they are doing business. As someone who is literally doing these cases against a number of health systems, that's just false. And I encourage you all to read the mandate for yourselves and see if it follows up with what she's saying. Okay? With respect to your question, I believe that once you get past the religious exemption stage, okay? And the religious exemption is granted, the law cannot divorce itself of the religious nature of the original objection when you're talking about the accommodations that are being granted. If the accommodations denigrate the employee, they should be objectionable and they should be challengeable under Title VII and the MHRA. Okay. Under what theory? Is it that they're not reasonable? Yes, your honor. And that when the objection is made, when the objection to the accommodation is made, the employer has a duty to, at a minimum, engage in a dialogue to see if it can be resolved. That's kind of a procedural issue, I mean. This is a rule-making court. Well, some may disagree with that, but why is her interpretation of trans world wrong? Well, first of all, I would like to point out the fact that a good portion of trans world has been either overruled or massively distinguished by Groff v. DeJoy. I understand that she wants to still operate in a trans world world where it's de minimis versus substantial burden in the context of the employment, the employer's entire business. I mean, that's a massive change. Hardison has been massively criticized over the last, what is it, 20 years? It's been massively criticized. I understand that that's a case that they like, but it's been eaten away on so much that I don't even know what's left. Is there a case that says you cannot resolve a claim of religious, or you cannot accommodate a claim of religious belief with an accommodation that creates a material employment disadvantage? Is there a case that says that? I can't sit here today and point it out to you. The only thing that I can point out to you, Your Honor, is the complete absence of circuit court case law that allows for what Judge Wright did. Okay, the last thing that I would like to bring up to the Court, and I'm sure you're all aware of this, but just in the possibility that you're not, is that the Eight Circuit's standard that we're operating under is currently under review at the U.S. Supreme Court level in Muldrow v. the City of St. Louis. In the case Muldrow v. the City of St. Louis, the petitioner basically pointed to the fact that there's about six different standards that are being applied in the various circuits and the need for one uniform standard with respect to these issues. Their argument is that basically the Eight Circuit and Fifth Circuit standards are atextual, meaning they go outside the express language of Title VII, and there is a need for a uniform standard, and I think that's probably right. Your rights under Title VII should not vary based upon where the case originates. That seems to be something that's beyond our ability to control here today, given our precedents. No, but what I'd ask is the case has already been argued, Your Honors. What I would ask is at least wait for the decision to come down, no matter how it comes down, so that this particular decision can be made under these supposedly upcoming uniform standards. Hope springs eternal that the Supreme Court will answer our problems, and we are frequently disappointed. But we understand, and we'll give that due consideration. Thank you very much for your arguments here today. They were helpful and useful, and the Court will take the matter under advisement. Once again, thank you all for consenting to arguing in front of the student body here. It's very helpful for their educational purposes. Does that exhaust the calendar? Yes, it does, Your Honor. All right. We will stand adjourned until further call of the Court. All right. Okay. The lawyers are free to leave. We're having a big debate here about whether we're going to conference and talk to the students.